IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN DOE, | * | C.A. No. _____ |
| | * | |
| Plaintiff, | * | DEMAND FOR TRIAL BY JURY |
| | * | |
| v. | * | |
| | * | |
| BELL SUPPLY COMPANY, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

**COMPLAINT**

COMES NOW, John Doe[1], by and through his undersigned attorney, who brings this Complaint against Defendant Bell Supply Company, Inc., alleging as follows:

**FACTS**

**Parties**

1. Plaintiff John Doe ("Plaintiff") is a Delaware resident who may be contacted for purposes of this litigation through her attorney, Daniel C. Herr, Esquire at 1225 N. King Street, Suite 1000, Wilmington, DE 19801.

2. Defendant Belly Supply Company, Inc. ("Defendant") is a Delaware corporation formed pursuant to the laws and regulations of Delaware. Defendant's registered agent is Capitol Services, Inc., 1675 S. State Street, Suite B, Dover, DE 19901.

**Jurisdiction and Venue**

---

[1] Plaintiff has filed this case under the pseudonym "John Doe" as this Complaint – and the forthcoming litigation – necessarily includes Plaintiff's personal health issues, particularly that Plaintiff is HIV-positive.

1

3. This Court has jurisdiction over the claims asserted herein as Plaintiff worked in Delaware, is a resident of Delaware, and Defendant operates in and is incorporated in the State of Delaware. Venue is proper for the same reasons.

4. This is a civil action for damages arising under the Americans with Disabilities Act (as Amended) and Delaware Common Law.

## Common Allegations of Fact

5. Plaintiff began working for Defendant in or around 1986.

6. Plaintiff worked for Defendant for approximately 27 years before Defendant terminated Plaintiff during the Summer 2013.

7. At all relevant times, Plaintiff was a comptroller for Defendant.

8. Plaintiff performed his duties as comptroller for Defendant to Defendant's satisfaction at all relevant times.

9. Defendant, in fact, admitted this after it terminated Plaintiff through sworn trial testimony

10. Beyond that, Plaintiff was an exemplary employee at all relevant times, including at the time in which Defendant terminated him.

11. At all relevant times, Plaintiff was HIV-positive.

12. From the beginning of Plaintiff's employment with Defendant through in or around March 2013, Defendant was not aware that Plaintiff was HIV-positive.

13. Plaintiff had not disclosed to Defendant that he was HIV-positive.

14. In or around March 2013, one of Plaintiff's medical providers mistakenly faxed documentation to Defendant that indicated Plaintiff was HIV positive.

15. The faxed documentation included Plaintiffs name and stated his status as HIV-positive.

16. The faxed documentation also included the words "AIDS Delaware."

17. A Defendant employee, Carolyn Teoli, retrieved the fax from Defendant's fax machine, reviewed it, then placed the fax into Plaintiff's bin (where Plaintiff would retrieve mail, faxes, and other documents).

18. Thereafter, upon information and belief, Teoli shared Plaintiff's HIV status – and perhaps that she thought Plaintiff had AIDS – with other Defendant employees, including but not limited to Defendant-management (John Connor) and Defendant's owner (David Kursch).

19. Teoli, Connor, and Kursch acted as agents of Defendant at all relevant times.

20. Upon learning that Defendant became aware of his HIV-positive status, Plaintiff, highly-distressed, took two unplanned days off of work, which abutted a weekend.

21. When Plaintiff returned from these approximate four days off, various Defendant-employees treated Plaintiff differently.

22. Though Defendant espouses itself as a "family-oriented" operation, no one asked Plaintiff where he was, how he was doing, and why he had taken time off unexpectedly.

23. It was atypical of Plaintiff to take time off unexpectedly.

24. After Plaintiff's HIV-positive status was revealed, various Defendant-employees were less friendly – and even unfriendly – towards Plaintiff.

25. Various Defendant-employees spoke to Plaintiff less than they had prior to the fax – some avoided Plaintiff altogether at times.

26. Plaintiff noticed that Teoli began routinely disinfecting office equipment, something she had not done prior to learning Plaintiff was HIV-positive.

27. Specifically, after Plaintiff used Teoli's phone, Teoli would routinely disinfect her phone before using it herself.

28. Defendant's poor treatment of Plaintiff continued through the time it terminated Plaintiff at the end of July 2013.

29. At this time (and during the conclusion of every month), Plaintiff arrived to work very early – approximately 6 a.m. – and left early as a result. This was in order to handle an end of the month bookkeeping and accounting function.

30. Plaintiff had been coming in early – and leaving early – at the end of every month for approximately 13 years.

31. Plaintiff came in early and left early towards the end of July 2013 as he always had.

32. Defendant knew Plaintiff did this, accepted that Plaintiff did this, and even appreciated that Plaintiff did this in order to complete a necessary end-of-the-month bookkeeping and accounting function.

33. In or around the end of July 2013, however, a Connor approached Kursch and claimed that Plaintiff was taking too much time off from work. This concerned Plaintiff leaving early on the day Plaintiff performed his end-of-the-month accounting and bookkeeping function.

34. Connor happened to be responsible for Defendant's medical insurance premiums on behalf of its employees. Upon information and belief, Conner, in addition to knowing that Plaintiff was HIV-positive, realized that Defendant's insurance premiums were substantially higher than they would have been if Plaintiff was not HIV-positive.

35. Kursch took the issue of Plaintiff purportedly taking too much time off of work directly to Plaintiff.

36. Kursch and Plaintiff discussed the issue, Plaintiff explaining this is what he had always done for 13 years (and Kursch, Connor, and various other Defendant-employees knew this).

37. On or about the next day, Kursch terminated Plaintiff as a result of Plaintiff purportedly taking too much time off of work and as a result of the conversation Kursch had with Plaintiff concerning the same issue.

38. Plaintiff did not take too much time off of work, and to the contrary, took little time off of work.

39. Defendant used a minor, contrived issue to terminate Plaintiff as a result of learning that Plaintiff was HIV-positive or perhaps had AIDS.

40. Defendant's motivation in terminating Plaintiff was as a result of knowing that Plaintiff is HIV-positive and/or has AIDS.

41. Plaintiff timely filed Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant alleging Americans with Disabilities Act Discrimination against Defendant.

42. The EEOC issued Plaintiff a Right to Sue Notice on April 19, 2016.

### COUNT 1: AMERICANS WITH DISABILITIES ACT (AS AMENDED) DISCRIMINATION

43. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint (except those that are inconsistent with this cause of action, including but not limited pleadings in the alternative), above and below, as though fully set forth herein.

44. For the reasons set forth herein, Defendant terminated Plaintiff as a result of learning he was HIV-positive and/or had AIDS.

45. Defendant use pretext to terminate Plaintiff, claiming it was a result of trivial and false issue.

46. As a direct and proximate result, Plaintiff has suffered economic damages and emotional distress

## COUNT 2:  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

47. Plaintiff re-alleges and incorporates by reference all allegations and paragraphs in this complaint (except those that are inconsistent with this cause of action, including but not limited pleadings in the alternative), above and below, as though fully set forth herein.

48. Defendant created a fictitious record concerning Plaintiff – that Plaintiff had been taking too much time off of work – in order to terminate Plaintiff.

49. Plaintiff had not taken excessive time off from work – and to the contrary, took little time off of work.

50. Defendant terminated Plaintiff as a result of this false record.

51. As a direct and proximate result, Plaintiff has suffered economic damages and emotional distress.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. All lawful compensatory and economic damages, in an amount to be determined, against Defendant.

B. Punitive damages.

C. Reasonable attorneys' fees pursuant to the Americans with Disabilities Act as Amended.

D. Such other relief as this Court deems just and equitable.

E. Pre and post-judgment interest.

F. Costs.

G. Trial by Jury.

                                                                **LAW OFFICE OF**
                                                                **DANIEL C. HERR LLC**

Date: July 9, 2016                                        */s/Daniel C. Herr*

Daniel C. Herr, Esquire, Bar ID 5497
1225 N. King Street, Suite 1000
Wilmington, DE 19801
(302) 483-7060
dherr@dherrlaw.com
*Attorney for Plaintiff*